# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 20-0114V
UNPUBLISHED

| | |
|---|---|
| TERESA WASHIINGTON-JENKINS,<br><br>      Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>      Respondent. | Chief Special Master Corcoran<br><br>Filed: December 7, 2021<br><br>Special Processing Unit (SPU);<br>Findings of Fact; Statutory Six Month<br>Requirement  Influenza (Flu)<br>Vaccine; Shoulder Injury Related to<br>Vaccine Administration (SIRVA) |

*Jeffrey S. Pop, Jeffrey S. Pop & Associates, Beverly Hills, CA,* for Petitioner.

*Naseem Kourosh, U.S. Department of Justice, Washington, DC,* for Respondent.

## **FINDINGS OF FACT**[1]

On January 31, 2020, Teresa Washington-Jenkins filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that she suffered a left shoulder injury related to vaccine administration ("SIRVA"), a defined Table Injury, after receiving the influenza ("flu") vaccine on September 18, 2017. Petition at 1, ¶ 5. In the alternative, Petitioner alleged that her left shoulder injury was caused-in-fact by the flu vaccine she received. *Id.* at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

---

[1] Because this unpublished Fact Ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Fact Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all Section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons discussed below, I find Petitioner suffered the residual effects of her alleged SIRVA for more than six months.

## I.     Relevant Procedural History

Within a month of initiating the case, Petitioner filed the medical records required under the Vaccine Act. Exhibits 1-8, filed Feb. 13, 2020, ECF No. 6; *see* Section 11(c). On April 26, 2021, Respondent indicated that he intended to oppose compensation in this case. ECF No. 18. Two months later, he filed his Rule 4(c) Report setting out his objections to compensation. ECF No. 20. In it, he specifically maintained the six-month severity requirement could not be met. Rule 4(c) Report at 6, filed June 28, 2021. Citing a five-month gap in treatment - from late December 2017 until mid-June 2018 - and arguing that the left shoulder pain Petitioner experienced in June 2018 was due to a new injury, Respondent maintained that "the evidence in this case establishes that [P]etitioner's alleged injury lasted for less than four months." *Id.* at 6-7.

Petitioner maintains she can establish severity. Petitioner's Brief Regarding the Vaccine Ac's Severity Requirement ("Pet. Brief"), filed Sept. 14, 2021, at 20, ECF No. 22. Specifically, she stresses that she continued to attribute the onset of her left shoulder pain to the flu vaccine she received during appointments more than six months post-vaccination. She also maintains the medical record does not establish that she recovered from her SIRVA, only to reinjure her shoulder in a different manner. *Id.* Along with her brief, Petitioner filed a supplemental affidavit, affidavits from her son, two daughters, and friend, and a copy of an October 9, 2017 text message she sent to one of her daughters regarding her left shoulder pain. Exhibits 10-15, filed Sept. 14, 2021, ECF No. 21.

The matter is now ripe for adjudication.

## II.    Issue

At issue is whether Petitioner continued to suffer the residual effects of the alleged SIRVA for more than six months. Section 11(c)(1)(D)(i) (statutory six-month requirement).

## III.   Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of

petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, at *19. And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

Medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly

recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### IV.  Finding of Fact

I make this fact finding after a complete review of the record, including all medical records, affidavits, testimony, expert reports, Respondent's Rule 4 Report, and additional evidence filed. Specifically, I determine the following:

- On September 18, 2017, Petitioner was seen by her primary care provider ("PCP") for lower back and left leg pain, specifically she reported experiencing pain in the back of her left thigh which travel down her calf into her foot. Exhibit 3 at 100, 104. Petitioner received the influenza vaccine alleged as causal in her left deltoid during this visit. *Id.* at 100; *see also* Exhibit 2.

- To treat her lower back and leg pain, Petitioner attended five physical therapy ("PT") sessions during late September through early November 2017. Exhibit 4 at 60-101. At her second PT session on October 11, 2017, Petitioner reported "left shoulder pain since getting the flu shot a couple of weeks ago." *Id.* at 63. She added that she was going to the doctor for this pain. *Id.*

- In the records from initial PT sessions on September 28 and October 11, 2017, it was noted that Petitioner's blood pressure was measured at her left wrist, presumably to avoid exacerbating her left shoulder pain. Exhibit 4 at 63, 67, 70, 74. This notation was not included in the records from PT sessions beginning on October 19 and 24, 2017. *Id.* at 80, 82, 87.

- The same day she mentioned her left shoulder pain to her physical therapist, Petitioner was seen by a physician's assistant at her PCP clinic.

4

Exhibit 3 at 108-15. She reported left arm pain after receiving the flu vaccine in September 2017, which caused her difficulty when lifting her arm. *Id.* at 112. The physician assistant opined Petitioner's pain was related to her cervical radiculopathy and instructed Petitioner to apply heat, stretch, and ensure her posture was correct. Petitioner declined pain medication, steroids, and muscle relaxers. *Id.* at 114.

- When seen for a check of her diabetes on December 28, 2017, Petitioner again complained of left shoulder pain since receiving the flu vaccine in September 2017, noting that it hurt to move her arm. Exhibit 3 at 116, 121. Observing non-specific discomfort upon palpitation, mildly decreased range of motion ("ROM"), and normal strength, Petitioner's PCP prescribed home exercises for her left shoulder pain. *Id.* at 122-23.

- In early 2018, Petitioner sought medical treatment on February 15, 2018, from an urgent care clinic for pink eye and on March 29, 2018, from her PCP for a rash on her hands. Exhibit 6 at 28; Exhibit 3 at 126 (respectively). There is no mention of left shoulder pain in the records from these two visits. Exhibit 6 at 24-31; Exhibit 3 at 126-34.

- In her affidavit, Petitioner admitted that she did not mention her left shoulder pain during the February 2018 appointment at the urgent care clinic, but maintains that she reported continued left shoulder pain when seen by her PCP in late March 2018. Exhibit 10 at ¶¶ 6-7. She posited that this was not included in the medical record from that visit because her PCP did not address the complaint, adding that she felt her complaint was not being taken seriously. *Id.* at ¶ 7.

- On June 18, 2018, more than nine months post-vaccination, Petitioner visited her PCP for a diabetes check and left shoulder pain and decreased ROM - present since receiving the flu shot but recently worsening after pulling a suitcase while traveling. Exhibit 3 at 135. Although she previously refused PT - opting instead for a home exercise program which she indicated had helped, Petitioner stated that she now was willing to attend PT. *Id.* at 135, 140. Petitioner reported that she started taking Fosamax along with a calcium supplement, and had increased her vitamin D supplement after experiencing left arm pain since her flu shot. She added that she had been "lifting a lot" prior to the appointment. *Id.* at 141. Her PCP diagnosed Petitioner with rotator cuff strain which had been unresponsive to home exercises and prescribed PT. *Id.* at 143.

5

- Petitioner insists that her "left shoulder pain never went away [and that she] never reinjured [her] shoulder." Exhibit 10 at ¶ 12. Petitioner's children echoed this assertion in their affidavits. Exhibit 11 at ¶ 12; Exhibit 13 at ¶ 12; Exhibit 14 at ¶ 9.

- From late August through mid-October 2018, Petitioner attended twelve PT sessions. Exhibit 4 at 105-75. At her initial evaluation, she reported constant upper left arm pain since her flu vaccine with intermittent flare-ups. She estimated the level of her pain as three out of ten. *Id.* at 106. The physical therapist observed pain with palpitation over the left deltoid, weakness, and decreased ROM. *Id.* at 106-07. Her DASH score was noted to be 48. *Id,* at 107. At her last PT session on October 15, 2018, Petitioner was noted to be progressing well - exhibiting improved ROM and increased strength. Noted as meeting all PT goals, Petitioner was discharge with instructions to continue her HEP. *Id.* at 173.

- The medical records show Petitioner sought medical treatment from her PCP on two occasions during January and February 2019. They do not contain any complaints of left shoulder pain. Exhibit 7 at 9-16; Exhibit 5 at 50-61 (respectively).

The above medical entries show that Petitioner experienced relatively mild left shoulder pain and limitations in ROM after receiving the flu vaccine on September 18, 2017. Although she experienced intermittent flare-ups and appears to have aggravated her injury during travel and exercise in early 2018, the evidence supports Petitioner's assertion that she experienced this low level of pain since vaccination.

Throughout the medical records, Petitioner consistently attributed her left shoulder pain to the flu vaccine she received. And when she reported pain after pulling a suitcase and lifting at the gym, she clearly characterized the effects of these activities as a *worsening* of already-existing pain.

Petitioner's failure to report her left shoulder pain when seen for pink eye at an urgent care clinic in February 2018 is understandable, given that the appointment was for an acute condition and did not occur with her normal provider. The lack of any mention of left shoulder pain in the record from her March 2018 visit to her PCP is a more significant omission, but not sufficient to counter the numerous other entries supporting Petitioner's claims of ongoing, albeit mild, pain.

Accordingly, I find there is preponderant evidence to establish Petitioner suffered the residual effects of her injury for more than six months.

## V.      Scheduling Order

Given the mild nature of Petitioner's injury, which appears to have resolved by mid-October 2018, and the impact of the non-vaccine related activities which may have exacerbated her condition, I do not expect a high level of compensation in this case. Petitioner previously submitted a demand, which included an amount to satisfy the Medicaid lien in this case, on January 20, 2021. The parties should discuss the amount Petitioner seeks and determine their preferred next step(s) in this case.

**The parties shall file a status report updating me their efforts to informally resolve this SPU case and informing me of their preferred next step(s) by no later than <u>Friday, January 07, 2022</u>.**

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master